In re Darius SULLIVAN, Dottie Sullivan d/b/a Sullivan Brothers Coal Co., Cherry Hill Development, Sullivan Brothers IGA, Warrier Coal Co., S & S Fuels.

In re James SULLIVAN, Justine Sullivan, d/b/a Sullivan Brothers Coal Co., Sullivan Brothers IGA, Cherry Hill Development, Warrier Coal Co., S & S Fuels.

### In re SULLIVAN BROTHERS COAL CO.

**Bankruptcy Nos. 87–00062, 87–00063 and 87–00076.**

United States Bankruptcy Court, E.D. Kentucky, at Pikeville.

Aug. 24, 1990.

Katherine A. Adams, Lexington, Ky., and Ellen S. Cappellanti, Charleston, W.Va., for debtors.

Arnold Jones, Frankfort, Ky., for Kentucky Revenue Cabinet.

## MEMORANDUM OPINION

CLIVE W. BARE, Bankruptcy Judge.

As framed by the Commonwealth of Kentucky Revenue Cabinet, a creditor in this chapter 11 case, the question to be decided is, are the tax claims numbered 21 through 34 on the Revenue Cabinet's proof of claim the liability of the debtors herein, that is the Sullivan Brothers as a partnership, or are they, as claimed by the debtors, the responsibility of Sullivan Brothers, Inc., an entity not before the court. In an agreed order entered by this court on November 14, 1989, the parties resolved certain portions of the Revenue Cabinet's claim, but they are unable to agree on that portion of the claim set forth in paragraphs 21 through 34 in the sum of $109,754.21, and have requested this court to resolve the matter pursuant to 11 U.S.C. section 505.[1]

### I.

On September 12, 1978, Sullivan Brothers Coal Company, a Kentucky general partnership (the "Partnership") with James Sullivan and Darius Sullivan as the only general partners, applied for a coal severance number from the (then) Department of Revenue, and in a letter dated October 24, 1978, was notified by Revenue that they were assigned revenue number 51680. Darius Sullivan signed the application as "co-owner".

---

1. "Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. section 505(a).

Claim no. 21 of the Revenue Cabinet relates to a dishonored check dated September 12, 1985, drawn on the account of Sullivan Brothers Coal Co. in the amount of $10,000.00 for "1st payment on back taxes." This check was an attempt to pay a severance tax bill under number 51680. The remaining claims numbers 22 through 34, relate to monthly coal severance tax returns filed by the Partnership. These monthly returns are for various periods beginning September 1984 and ending December 1985 and one late assessment for the 1970 tax period. All are signed by individuals who represent themselves to be a bookkeeper or either an owner or partner of the Partnership. All returns were submitted under the severance number 51680.

In January 1980 the Sullivans incorporated Sullivan Brothers, Inc., a Kentucky corporation wholly owned by the Sullivans (the "Corporation"). There is no evidence that the Corporation ever applied for a coal severance tax number; however, the Corporation did obtain a Kentucky Withholding, Sales and Use Tax identification number.

The Partnership leased certain seams of coal located in Pike County, Kentucky on July 28, 1982. On September 21, 1982, the Partnership subleased these seams of coal to the Corporation. It is the mining activities on this piece of property that resulted in the coal tax assessments at issue in this case.

The debtors assert the Partnership did not conduct any mining activities on this property and, in fact, did not employ any workers for this purpose. Further, they assert that the Corporation did employ miners during this period of time, as evidenced by the withholding taxes it paid. The Corporation was also the holder of the mining permit issued January 18, 1985 by the Kentucky Department for Surface Mining Reclamation and Enforcement.

Debtors contend that at all relative times to this dispute, the Corporation owned the economic interest in the coal and conducted the mining activities. It then sold the coal to the Partnership which sold the coal to other parties.

According to the debtors—

"Unfortunately, during this period of time, the bookkeeper who prepared both the Partnership's and the Corporation's applications and returns, improperly failed to distinguish between the necessary tax reports and tax liabilities of the two entities. Certain returns were filed that indicated the Partnership was responsible."

Debtors' brief, p. 3.

In support of their assertion, the debtors submit only the affidavit of Charlene Sullivan.

## II.

The legal position of the Revenue Cabinet is that this is a case of estoppel. The Cabinet insists that the well established rule in Kentucky is that "... one may not deny today what he solemnly swore was true yesterday." *Nunellee v. Nunellee*, 415 S.W.2d 114 at 116 (Ky.1967). The Cabinet points out that on the back of the severance tax returns, next to the signature line, is this statement:

"I declare, under the penalties of perjury, that this return has been examined by me and to the best of my knowledge and belief is a true, correct and complete return."

The Revenue Cabinet cites *Revenue Cabinet, Commonwealth of Kentucky v. Saylor*, 738 S.W.2d 426 (Ky.App.1987), discussed infra.

The debtors assert several theories in opposition to the Revenue Cabinet claim. First, they say there is no statutory authority for any imposition of liability on the Partnership, citing KRS 143.020.[2] Second, that since the Revenue Cabinet cannot establish that it has a claim against the debtors under the applicable state statutes, it does not have a claim against the debtors under the terms of the Bankruptcy Code.

---

**2.** For the privilege of severing or processing coal, in addition to all other taxes imposed by law, a tax is hereby levied on every taxpayer engaged in severing and/or processing coal within the Commonwealth.... KRS 143.020.

11 U.S.C. section 502. Third, even if the Cabinet could establish some basis for transferring the statutory severance tax liability of an entity mining coal to a debtor based on the theory of estoppel, it has not and cannot establish that this equitable theory is applicable to the facts at hand, citing *Electric V. W. P. Bd. of Frankfort v. Suburban A.D., Inc.*, 513 S.W.2d 489, 491 (Ky. 1974); *In re Project 5 Drilling Program—1980*, 30 B.R. 670, 674 (Bkrtcy.W.D.Okla. 1983).

### III.

The debtors' objection to the claim of the Revenue Cabinet will be overruled. It is not disputed that the Partnership applied for and was granted a revenue number. It is not disputed that thereafter either the bookkeeper, owner or partner filed under oath monthly returns beginning in September 1984 and ending December 1985. Six of the returns appear to have been signed by the bookkeeper Charlene Sullivan, five by the partner Darius Sullivan, and one by the partner James Sullivan. All returns were submitted under severance number 51680. The $10,000 check dated September 12, 1985 is signed by Darius Sullivan. The Corporation, Sullivan Brothers, Inc., never applied for a tax number nor an assignment of the proprietorship number. It is inconceivable that the partners were unaware of the filing of the monthly reports in the name and under the revenue number of Sullivan Brothers Coal Co., as the returns plainly show. There is not one iota of proof in this record that the Revenue Cabinet was not justified in relying upon the monthly statements filed under severance number 51680. It had no basis for questioning the accuracy of the information provided in the tax returns. Either intentionally or through gross negligence, the Partnership caused the Revenue Cabinet to rely on those reports. To permit the Partnership to now evade payment of the taxes due as the result of those filings would be highly inequitable. If Sullivan Brothers, Inc. is the entity that actually mined the coal, the Partnership can look to that entity for reimbursement.

The verified schedules and statement of financial affairs filed May 1, 1987 by the debtor (the Partnership) in its chapter 11 case state that the debtor is engaged in "Coal mining, sales, leasing, permitting and related activities." The debtor reflects the liquidation value of its mining equipment as approximately $611,500.00. In Schedule A–1d the debtor listed a debt owing to the Commonwealth of Kentucky for severance and sales taxes in the amount of $130,-000.00. More importantly, the debtor did not schedule this debt as "disputed, contingent, or unliquidated." See 11 U.S.C. 1111(a).

The proof submitted by the debtors is wholly insufficient to negate the liability of the Partnership for the taxes owing the Commonwealth for the severed coal. The debtors, either as partners of the Partnership or as stockholders of the Corporation, are the ones who benefitted for the failure to pay the severance taxes due.

### IV.

In *Revenue Cabinet, Commonwealth of Kentucky v. Saylor*, 738 S.W.2d 426 (Ky. App.1987), one Byrd Saylor operated his business, a sole proprietorship known as "Numismatic Exchange" for a period of time. The retail business sold bullion coins, numismatic coins and jewelry. On January 24, 1978, Saylor incorporated the business. However, he never notified the cabinet of this fact. The Corporation never applied for a tax number. Saylor continued to operate his business under the authority of the sales and use tax permit which had been issued in his individual name. He continued to sign the monthly sales tax returns as the "owner." The Court of Appeals held that Saylor was personally liable for the sales which took place subsequent to the date he incorporated his business.

"Given the fact that Saylor never formally notified the cabinet either orally or in writing that he had incorporated his business, the fact that his corporation never applied for a sales tax permit, and the fact that Saylor never designated the corporation as the taxpayer on his tax

returns but merely signed them as 'owner' without indicating that he was doing so as a corporate officer, we conclude there was no basis for the [circuit] court to determine that he should not be personally liable for the sales tax due as a result of corporate sales made under the authority conferred by the permit issued to him in his own name."

The facts before this court in the instant case are remarkably similar. Sullivan Brothers Coal Company, a partnership, applied for a coal severance number. The company was notified that they had been registered with the Severance Tax Section and assigned registration number 51680. They filed sworn monthly coal tax returns. See KRS 143.030(2). These returns were signed by a bookkeeper, an owner, or a partner. The Partnership never notified the Cabinet they had incorporated the business. The Corporation never applied for a coal severance number. The Corporation was never designated on the returns as the taxpayer.

Sullivan Brothers Coal Company, and its general partners James Sullivan and Darius Sullivan, are liable for coal severance taxes in the amount of $109,754.21 as set forth in paragraphs 21 through 34 of the Revenue Cabinet's proof of claim.